UNITED STATES, Appellee,

v.

**Marshall F. DAVENPORT, Staff Sergeant, U.S. Army, Appellant.**

No. 44,353.

CM 441370.

U.S. Court of Military Appeals.

March 12, 1984.

For Appellant: *Captain Marcus C. McCarty* (argued); *Colonel William G. Eckhardt, Major Paul J. Luedtke* (on brief); *Captain Thomas R. Peppler.*

For Appellee: *Captain John J. Park, Jr.* (argued); *Colonel R.R. Boller, Lieutenant Colonel John T. Edwards, Major Joseph A. Rehyansky* (on brief); *Colonel James Kucera.*

*Opinion of the Court*

COOK, Judge:

Contrary to his pleas, the accused was convicted by a general court-martial of unpremeditated murder, in violation of Article 118, Uniform Code of Military Justice, 10 U.S.C. § 918. The approved sentence extends to a dishonorable discharge, confinement at hard labor for 20 years, forfeiture of all pay and allowances, and reduction to the grade of private (E–1). The United States Army Court of Military Review affirmed the findings and sentence. 14 M.J. 547 (1982). We granted the accused's petition for review of the following issue:

WHETHER THE MILITARY JUDGE ABUSED HIS DISCRETION BY DENYING THE DEFENSE CHALLENGE OF A COURT MEMBER FOR CAUSE.

In addition we specified the following issue:

WHETHER APPELLANT'S UTILIZATION OF HIS PEREMPTORY CHALLENGE WAIVED THE DENIAL OF HIS CHALLENGE OF LIEUTENANT COLONEL HAGLER FOR APPEAL.

Since we hold that the military judge did not abuse his discretion by denying the challenge of a court member for cause, we need not address the specified issue.

The basis for the challenge for cause arose during the *voir dire* of Lieutenant Colonel Hagler. The pertinent part of this colloquy discloses:

IDC: Do you think there can be any place in the Service for a Staff Sergeant who has been convicted of unpremeditated murder?

MEMBER (LTC Hagler): In the Service—on active duty?

IDC: Yes, Sir.

MEMBER (LTC Hagler): I would have to weigh the evidence, but ah—looking at the charge and if found guilty of the accusation here, ah—no, I do not.

IDC: Do you think that the background of the service member or the circumstances of the offense, assuming that he is found guilty, could you imagine anything that might dissuade you from that feeling?

MEMBER (LTC Hagler): When I read the flyer here and it says, "murder" as opposed to manslaughter, that weighs very heavily in my mind; where being in a unit, where almost everyday, there are situations very close to that ah—that occur—either good or bad, and if in fact the accused in this case were found guilty by the panel of the charge of murder, then I would say that there is certainly no further use for him on the active duty rolls.

IDC: And that would be regardless of his background or the circumstances of the case?

MEMBER (LTC Hagler): I can't say that without seeing the evidence, but I would tend to say yes. You are asking me a question in a total vacuum.

IDC: Yes, Sir—I am. For this reason—there are people who feel strongly about one offense or another because of their backgrounds and personal experiences. Each of us reacts differently, ah—when confronted with different offenses.

MEMBER (LTC Hagler): That's true.

IDC: And there are some of us, who because of our educational, emotional, personal backgrounds, feel so strongly about a particular type of offense, that regardless of what we lawyers call extenuation and mitigation, the background of the accused, circumstances surrounding the offense, the personal feelings are so strong that in all honesty the jury member would feel compelled personally to vote for expulsion from the Service—could not conceive of honestly and fairly considering to permitting such a service member to remain in the Service.

MEMBER (LTC Hagler): Why don't you ask me this, Mr. Cohen. Would I want the accused, if proven guilty, to serve in my battalion or the United States Army ever in any capacity for me—my answer is definitely not.

IDC: You answered the question, Sir.

MEMBER (LTC Hagler): Okay. Fine.

IDC: Thank you, Sir. Your Honor, I have no further questions of this jury member.

MJ: Does the trial counsel have any questions?

TC: Yes, Your Honor—I do. Colonel Hagler, let me just ask you if this is what you are saying. It might not be, but I'm just asking you if this is what you are saying. Is what you're saying—is that if this accused was found guilty as charged, of unpremeditated murder, you would consider his entire background or whatever was presented to you by the defense or the Government for that matter, as well as the nature of the offense itself?

MEMBER (LTC Hagler): Precisely. I responded in the affirmative when Mr. Cohen asked that question earlier of the whole panel.

TC: Does that mean that the nature of the offense, while going to be a factor and possibly a significant factor in your decision as to a sentence if that became necessary, does that mean that is going to be the only factor that you'll consider?

MEMBER (LTC Hagler): No; that is not going to be the only factor that I will consider. Mr. Cohen asked me if I remember correctly—if the accused were found guilty of the accusation—the charge as listed here—a Violation of Article 118—the stabbing of another service member to death—right?

TC: That's correct, Sir.

MEMBER (LTC Hagler): Certainly I would weigh the total individual. I do it every week when I sit and go through Field Grade Article 15's. The chain-of-command comes in and they say, "how do you

feel about this individual"; and I ask them their personal recommendations on each and every case that comes before me—before I go either way.

TC: Sir, could it be said then that with respect to sentencing in this case, if sentencing becomes necessary, that you do not have an inelastic attitude, but that you have an elastic attitude at this point in time before hearing any evidence?

MJ: That's a matter of my decision, Counsel. I won't permit you to ask that.

TC: Okay. Let me ask you this, Sir. Is your mind made up right now as to an appropriate sentence in this case if he is found guilty, or will your mind be made up only after you hear all the evidence?

MEMBER (LTC Hagler): As I responded to Mr. Cohen, I have not pre-judged—I believe as you read to the jury—this is an accusation?

TC: Right—I mean with respect to the sentence.

MEMBER (LTC Hagler): Correct.

TC: Thank you, Sir. Nothing further.

MJ: Colonel, I know you are not a person who uses language loosely, and two of your responses sounded a little inconsistent. I suspect I may know the reason for it, but I want to clear it up.

MEMBER (LTC Hagler): All right, Sir.

MJ: I believe that ah—when the question was directed at the entire panel—as to whether if ah—he was convicted of this offense—feel compelled to vote for a punitive discharge. You didn't respond like all the rest of them; and then later you said that if he was convicted you would feel that you wouldn't want him in your office in essence—that you wouldn't want him serving in the Army with you in any capacity.

May I take it that ah—that simply is an acknowledgment—that you are aware that there are ways that people could be separated from the Military Service without a punitive discharge, even if you don't want to have them in the Army any longer?

MEMBER (LTC Hagler): Yes, Sir. That's why I look at the broad range as you instructed us to, Sir.

MJ: I thought that was probably what you were saying, but I just wanted to be sure. Any other questions?

TC: No, Your Honor.

IDC: No, Your Honor.

This Court has wrestled with the problem of court members who, as a result of vigorous questioning by defense counsel, which is often phrased in ambiguous and hypothetical terms, give answers that appear to indicate an inclination to adjudge a particular sentence. Often these interrogations involve consideration of an offense of such a nature that, if the accused were convicted, most thinking persons would, in the absence of some extenuating circumstances, conclude that separation from the service was appropriate. As we said in *United States v. Fort*, 16 U.S.C.M.A. 86, 89–90, 36 C.M.R. 242, 245–46 (1966):

> Some offenses are so heinous or so repugnant to common decency that the first thought of a court member might well be that the accused should, if convicted, be sentenced to a punitive discharge. A provisional impression of this kind is practically unavoidable. The law recognizes that a juror may enter the jury box with an unfavorable inclination toward certain offenses. [Citation omitted.] Such a juror, however, is not automatically disqualified. The question is whether, despite appropriate instructions to disregard the inclination, it is so strong that the juror will be influenced by it in his deliberations.

*Id.* at 89–90, 36 C.M.R. at 245–46.

What we have sought to guard against is a member who harbors such bias toward the crime that he, based upon the facts as they develop and the law as it is given by the military judge, cannot put his personal prejudices aside in order to arrive at a fair sentence for the accused. *United States v. Cleveland*, 15 U.S.C.M.A. 213, 35 C.M.R. 185 (1965). Military due process demands that the accused be accorded the right to have court members who are im-

partial and will determine his sentence, if he is convicted, on the basis of matters presented in open court. An "inelastic attitude" on the part of a court member as to a particular type of punishment is a ground for challenge for cause. *United States v. Fort, United States v. Cleveland,* both *supra.* An example of "an inelastic attitude" was presented in *United States v. Karnes,* 1 M.J. 92 (C.M.A.1975). There, a court member stated that he regarded the sale of marihuana as a serious offense which warranted the accused's separation from the service and that he could not think of any mitigating circumstance that would change his mind. We held that the military judge erred in not sustaining a challenge for cause, stating:

> While a mere distaste for a crime does not disqualify a member, he must be "mentally free to render an impartial finding and sentence based on the law and the evidence." [Citation omitted.] The responses of the member in the present case, however, clearly reflected an inelastic attitude toward the imposition of a punitive discharge which was based solely on the nature of the crime.

*Id.* at 94.

Later, in *United States v. McGowan,* 7 M.J. 205 (C.M.A.1979), we said:

> Appellant correctly notes that an inelastic attitude of a court member favoring a particular sentence is a ground for disqualification. [Citations omitted.] However, a mere predisposition to adjudge some punishment upon conviction is not, standing alone, sufficient to disqualify a member. Rather, the test is whether the member's attitude is of such a nature that he will not yield to the evidence presented and the judge's instructions.

*Id.* at 205–06.

More recently, in *United States v. Tippit,* 9 M.J. 106 (C.M.A.1980), we differentiated between the " 'mere predisposition to adjudge some punishment upon conviction' " and " 'an inelastic attitude' toward the imposition of a particular punishment." *Id.* at 107. But, we cautioned:

> The military judge ... need not engage in minute dissection of responses by members to artful, sometimes ambiguous, inquiries from counsel. Unless it is apparent to us from the record of the *voir dire* that a court member has a closed mind about the case he is to try, denial by the military judge of a challenge for cause should not be reversed.

*Id.* at 108.

Turning to the present case, we do not interpret the challenged member's responses to disclose "an inelastic attitude toward the imposition of a punitive discharge," *United States v. Karnes, supra,* but, instead, we believe that, in response "to [certain] artful, sometimes ambiguous, inquiries from counsel," *United States v. Tippit, supra,* he merely held "an unfavorable inclination toward" the crime of unpremeditated murder. Such "an inclination toward" a crime of this nature "is practically unavoidable," *United States v. Fort, supra,* and is not automatically disqualifying unless it is so strong that the member would be influenced by it in his deliberations, despite appropriate instructions from the military judge to disregard the inclination. In our opinion, the member's responses indicated that he would "consider ... [the accused's] entire background or whatever was presented ... by the defense or the Government ... as well as the nature of the offense" and that he "would weigh the total individual" before deciding which way he would go. His answers do not show such "a closed mind about the case he is to try," *United States v. Tippit, supra,* as to require reversal of the military judge's ruling for abuse of discretion.*

---

\* Although we find no abuse of discretion in the denial of this challenge for cause, there is one matter deserving our attention. After denying the challenge, the military judge said:

> The Court would like to make clear however that the decision to deny the challenge is not based purely upon the responses to my questions. Assuming for a moment that his response had been to the initial question, that if the accused is in fact convicted, as a result of the offense of unpremeditated murder, as a result of his personal feelings, regardless of

In the circumstances of this case, we are willing to allow considerably more leeway to a military judge when he is considering a challenge for cause than when he is considering an asserted claim which concerns illegal command influence or the manner in which the convening authority has exercised his power to appoint court members.

anything—any mitigating or extenuating factors—he would necessarily vote for a punitive discharge—the ruling of the court would be exactly the same. But, that was not his actual response, but had it been—it would have resulted in the same ruling.

While the military judge was merely philosophizing, this soliloquy does postulate an incor-

*See United States v. Karlson,* 16 M.J. 469 (C.M.A.1983).

The decision of the United States Army Court of Military Review is affirmed.

Chief Judge EVERETT and Judge FLETCHER concur.

rect statement of law. No doubt the judge was as repelled by the heinous nature of the crime as was the member, but the test is whether such personal feelings can be subjugated to consideration of the facts of the case and the law so as to guarantee the accused an unbiased consideration of his case by the members of the court.