UNITED STATES, Appellee,

v.

Craig E. MILLER, Private, U.S. Army, Appellant.

No. 45540/AR.
CM 442229.

U.S. Court of Military Appeals.

Jan. 14, 1985.

For Appellant: *Captain Bernard P. Ingold* (argued); *Colonel R.R. Brookshire II, Major Patrick F. Crow* and *Captain Brenda L. Lyons* (on brief); *Lieutenant Colonel Arthur L. Hunt, Lieutenant Colonel William P. Heaston, Captain Thomas J. Feeney, Captain Barbara M. Lederer.*

For Appellee: *Captain Robert C. Erickson, Jr.* (argued); *Colonel James Kucera, Lieutenant Colonel John T. Edwards, Captain Andrew D. Stewart,* and *Captain Charles S. Arberg* (on brief); *Major Michael R. Smythers.*

*Opinion of the Court*

FLETCHER, Judge:

On February 2, 1982, appellant was found guilty, in accordance with his pleas, of conspiring to damage military property and aggravated arson, in violation of Articles 81 and 126 of the Uniform Code of Military Justice, 10 U.S.C. §§ 881 and 926, respectively. The members of this general court-martial sentenced him to a dishonorable discharge, confinement at hard labor for 4 years and total forfeitures. Pursuant to a pretrial agreement, the convening authority reduced the confinement to 1 year and a day but otherwise approved the adjudged sentence. The United States Army Court of Military Review affirmed the findings of guilty and the approved sentence.

This Court granted review on the following question of law:

WHETHER THE MILITARY JUDGE ERRED TO THE SUBSTANTIAL PREJUDICE OF APPELLANT BY DENYING

APPELLANT'S CHALLENGE FOR CAUSE AGAINST CAPTAIN ROY D. PLUMER, JR., AND SECOND LIEUTENANT PAT N. DEMPSEY.

Resolution of this question depends on a thorough understanding of the undisputed facts surrounding this court-martial.

The offenses of which appellant was convicted were serious. They are appropriately summarized in a stipulation admitted at this court-martial in conjunction with his guilty pleas, which stated as fact:

> That in the early morning hours of 19 October 1981 Private Miller conspired with PFC Perez to commit an offense under the UCMJ, to wit: wrongfully throwing a molotov cocktail into the Company Commander's office. In order to carry out the conspiracy, Private Miller constructed a molotov cocktail by taking gasoline from a military jeep, placing it in a wine bottle, and inserting a rag. Then Private Miller went outside the commander's office, lit the rag and threw the molotov [sic] into the building, an inhabited dwelling.

> He did this wilfully and maliciously and specifically intended the commission of the offense. The office is property of the United States of a value in excess of $100.00 and the amount of damage was approximately $353.00.

The guilty plea inquiry indicates that appellant was angry at his first sergeant concerning "some conflicts" between them which "happened a while back." He stated that he was drinking and was overcome by anger and frustration. He further acknowledged that he intended to damage the first sergeant's and the company commander's offices to get back at the first sergeant.

The guilty plea inquiry does not indicate the source of the conflict between appellant and his first sergeant. Appellant's unsworn statement suggests that it stemmed from the first sergeant's taunting and flagging of his orders to Germany which he earnestly desired. It also indicates that this conflict occurred at a time significantly before the date of the offenses and during the time when the company was commanded by Lieutenant Curtis.

The company commander at the time of the offenses was Captain Austin. It was his office which was damaged by the molotov cocktail. The charge sheet reflects that he was also the accuser who preferred the charges against appellant on October 29, 1981. The record further indicates that Captain Austin had regularly served with Major Brown, Captain Plumer, and Second Lieutenant Dempsey as members of a court-martial panel since September 1981. In fact, Captain Austin was detailed on January 5, 1982, as a member of this panel to hear appellant's case. On January 29, 1982, a few days before this court-martial began, the convening authority removed him from this court panel.

At appellant's court-martial, he pled guilty and appropriate findings were made. The military judge then swore the detailed members and assembled the court. He conducted a preliminary voir dire and asked them whether they had "heard or read anything about the charges alleged in this case." Four of the seven members present, Lieutenant Colonel Becking, Major Brown, Captain Plumer, and Second Lieutenant Dempsey, answered in the affirmative. The panel was directed to withdraw to the deliberation room and the four members mentioned above were then summoned individually for voir dire.

Lieutenant Colonel Becking stated that Captain Austin, appellant's company commander, described the general details of the case to him. This conversation occurred prior to trial during the course of his association with Captain Austin. He stated that Captain Austin "was upset" "[b]ecause they fire-bombed his office." Lieutenant Colonel Becking stated that he did not recall if Captain Austin expressed his view as to "an adequate or reasonable punishment" in this case. He concluded that he had formed no opinions about the case as a result of this discussion.

Major Brown was then called for voir dire and stated that he "was the staff duty officer the night" the offenses occurred.

He noted that he "was familiar with the damage" caused by appellant's offense but he did not remember the "specifics" concerning the responsible individuals. He then said that while acting in the above capacity, he met Captain Austin, appellant's company commander. Captain Austin intimated to him that he thought he knew the individuals responsible and that the fire bombing was related to his recent disciplinary action towards them.

Major Brown also stated that he overheard Captain Austin discuss this case with Captain Plumer and Lieutenant Dempsey while all four were impaneled in other courts-martial. He was further questioned on this conversation:

DC: And, what has he said about the incident?

MAJ BROWN: Let's just say that he was anxious to see the action come to court.

DC: Then, he was anxious to see the individuals who were involved punished?

MAJ BROWN: Yes, he was.

DC: Did he express that in front of the other court members as well?

MAJ BROWN: Yes, he did.

Later trial counsel questioned him further:

TC: You don't know what they heard over that discussion, do you?

MAJ BROWN: I am certain they heard the same things that I did. And that is that the company commander was anxious for the case to go to trial and wanted to make sure that appropriate disciplinary action was taken.

Captain Plumer was summoned for individual voir dire and stated that he had served with Captain Austin on court-martial panels since September 1981. He acknowledged that Captain Austin had "spoken of the offense in general terms," not "specifics." Defense counsel further questioned him.

DC: Okay, now, please tell the court what you recollect Captain Austin saying to you about this case.

CPT PLUMER: That he definitely wanted to court-martial the guys and that he hoped that they were strongly disciplined and reprimanded.

Trial counsel questioned Captain Plumer about this conversation.

TC: Does that influence you, sitting here today?

CPT PLUMER: No, I don't think so.

Earlier, trial counsel had asked similar questions:

TC: As a result of talking to the company commander, do you feel in any way predisposed to act today?

CPT PLUMER: No, I don't believe so. I—I have no feelings either way.

TC: The oath that you took at the beginning, do you feel that you could uphold that oath?

CPT PLUMER: I believe so.

Second Lieutenant Dempsey was later called for individual voir dire. He acknowledged that he knew about the incident of the fire bombing of Captain Austin's office. He stated that he felt he could be impartial and was not predisposed based on his prior knowledge of the case. On questioning by defense counsel, he acknowledged that Captain Austin had conversations with him while they were court-martial members in other cases:

DC: What, exactly, did he say as far as you remember?

2LT DEMPSEY: Well, to my knowledge, sir, he said something to the effect that, I don't know whether to say—uh —"burn them" or—uh—"I hope they get what they deserve" or something to that effect, sir.

Trial defense counsel challenged Major Brown for cause based on his knowledge of the offense as staff duty officer on the night in question and his knowledge of Captain Austin's feelings about the punishment of the offenders. This challenge was sustained. The defense also challenged Captain Plumer and Second Lieutenant Dempsey based upon their association with Captain Austin who had informed them of his strong feelings concerning the appropri-

ate disposition of this case. Trial counsel opposed these challenges, arguing that the responses by Captain Plumer and Second Lieutenant Dempsey indicated they were not "predisposed" and that their involvement with Captain Austin was not sufficient to give them "insider's information." The military judge denied the defense's challenges for cause against Captain Plumer and Second Lieutenant Dempsey without explanation. The defense used its peremptory challenge against Major Jelinski.

-----

Five members determined appellant's sentence at this court-martial, which was the statutory minimum for the trial to proceed. Article 16(1)(A), UCMJ, 10 U.S.C. § 816(1)(A). Three of these members admitted that they discussed this case with appellant's company commander prior to trial. The military judge denied defense challenges of two of these members, which challenges were based on these pretrial conversations. If these challenges had been granted, a temporary continuance of the court-martial would have occurred so as to permit the convening authority to detail new members to the court. Article 29(b), UCMJ, 10 U.S.C. § 829(b). If this approach had been taken by the military judge, little doubt would exist as to the fairness of this court-martial.

■ The military judge, however, is not required to grant a challenge for cause simply on the basis of an "assertion of the challenger." Para. 62*h* (2), Manual for Courts-Martial, United States, 1969 (Revised edition); *see* Article 41(a), UCMJ, 10 U.S.C. § 841(a). As a matter of law, he has discretion to "determine the relevancy and validity of" the challenge for cause. Article 41(a). His discretion, however, is not absolute, and it must be exercised in a manner consistent with existing principles of law. *See generally United States v. Harris*, 13 M.J. 288, 292 (C.M.A. 1982) (opinion by Fletcher, J.). This is especially true when questions of command influence are clearly raised. *Id*; *see United States v. Davenport*, 17 M.J. 242, 246 (C.M.A. 1984); *United States v. Porter*, 17 M.J.

377, 380 (C.M.A. 1984) (Everett, C.J., concurring).

■ The first principle of military law which is applicable to these defense challenges for cause is set out in Article 25(d)(2), UCMJ, 10 U.S.C. § 825(d)(2). It states that "[n]o member of an armed force is eligible to serve as a member of a general ... court-martial when he is the accuser ..." An accuser is defined in Article 1(9), UCMJ, 10 U.S.C. § 801(9), as "a person who signs and swears to charges ... and any other person who has an interest other than an official interest in the prosecution of the accused." Captain Austin, who signed the charge sheet against appellant and whose office was damaged by appellant's conduct, clearly met this criteria. Of course, he did not sit on the court (*see* para. 62*f* (3), Manual, *supra* ), but he did directly communicate with the two challenged members who did sit. According to Major Brown, his intent was "to make sure that the appropriate disciplinary action was taken." His attempt to place himself on the court de facto surely contravened the spirit if not the letter of Article 25(d)(2).

■ The second principle of military law which was raised by the defense challenges is embraced in Article 37(a), UCMJ, 10 U.S.C. § 837(a). It states that "[n]o person subject to this chapter may attempt to coerce or, by any unauthorized means, influence the action of a court-martial ... or any member thereof, in reaching the ... sentence in any case ... " Captain Austin was appellant's company commander, and he particularly communicated his opinion to the challenged members that appellant receive stern punishment. It is not unreasonable in the military context to expect that such an opinion will have great weight with fellow officers. The ex parte communication of such an opinion before trial to probable members, or during trial to actual members, cannot be countenanced under the above codal article.

■ The third principle of military law raised by the defense challenges for cause concerns the status of Captain Austin and

the two challenged officers as members of the same panel regularly detailed to sit on courts-martial within this command. Article 16(1)(A). Each member of a court-martial takes an oath to "faithfully and impartially try" an accused in accordance with "the evidence," their consciences "and the laws applicable to trials by courts-martial." Para. 114*b*, Manual, *supra*, Article 42(a), UCMJ, 10 U.S.C. § 842(a). This oath obliges "[t]he member" to "undertake to administer justice, not according to his own private views of justice or his personal opinion as to what the law should be, but in strict compliance with" the law and on the basis of the evidence duly laid before the court. W. Winthrop, *Military Law and Precedents* 233–34 (2d ed. 1920 Reprint). We believe that this oath further contemplates that a member will not decide a case on the basis of a fellow member's private view of justice or personal opinion or in accordance with some type of extra legal accommodations between them. The possibility for such impropriety by the members of this regularly detailed panel clearly was raised in this case.

■ Paragraph 62*f*(13), Manual, *supra*, states that a permissible ground for a challenge for cause is:

Any other facts indicating that he should not sit as a member ... in the interest of having the trial and subsequent proceedings free from substantial doubt as to legality, fairness, and impartiality.

In addition paragraph 62*h* (2), Manual, *supra*, states:

The military judge ... should be liberal in passing on challenges, but need not sustain a challenge upon the mere assertion of the challenger.

As indicated earlier in this opinion, the voir dire in this case uncontrovertedly established three facts which raised serious doubts concerning the integrity of these military legal proceedings. *See generally United States v. Rosser*, 6 M.J. 267 (C.M.A. 1979). Nevertheless, the trial judge denied these challenges for cause in a summary fashion. This was legal error.

■ We first note that the only conceivable support in the record of trial for the judge's action was the disclaimer of predisposition given by each member upon questioning by counsel. These disclaimers were perfunctory in nature and unaccompanied by any explanation from the members as to why they should be believed. *United States v. Harris, supra* at 291–92; *see Patton v. Yount,* ___ U.S. ___, 104 S.Ct. 2885, 2891, 81 L.Ed.2d 847 (1984). In addition, the military judge failed to take any steps on his own to insure that these members understood the standard of impartiality required of them in view of the particular circumstances of this case. *See United States v. Mason*, 16 M.J. 455, 456–57 (C.M.A. 1983). Finally, the military judge's decision reflects a complete disregard for the realities of military life which create unique problems with respect to perceptions of fairness in criminal trials. *See United States v. Porter, supra* at 380; *United States v. Davenport, supra* at 246; *see generally Rushen v. Spain*, 464 U.S. 114, 104 S.Ct. 453, 456 n. 3, 78 L.Ed.2d 267 (1983); *Smith v. Phillips*, 455 U.S. 209, 221–24, 102 S.Ct. 940, 948–49, 71 L.Ed.2d 78 (1982) (O'Connor, J., concurring).

■ For the above reasons, we hold that the military judge under the circumstances of this case abused his discretion in denying these challenges for cause. Article 41(a). His decisions unquestionably contravene the principle of military law that a "military judge ... should be liberal in passing on challenges" for cause. Para. 62*h*(2), Manual, *supra*. Such conduct was particularly unreasonable "in view of the limited availability of peremptory challenges at courts-martial." *United States v. Porter, supra* at 380 (Fletcher, J., concurring in the result); *see United States v. Mason, supra* at 457 (Everett, C.J., dissenting).

■ The Government, arguing in the alternative, asserts that appellant's approved sentence may still be affirmed on the grounds of harmless error. Article 59(a),

UCMJ, 10 U.S.C. § 859(a). It contends that the sentence imposed by the members and further reduced by the convening authority, pursuant to a pretrial agreement, eliminated any possibility of prejudice to appellant, especially in light of the maximum authorized punishment of 20 years' confinement. Such an argument ignores the fact that the members adjudged a dishonorable discharge and the convening authority approved this severe punishment. In addition, we note that this is not a case where the members challenged for cause did not participate in the sentencing decision. *See United States v. Harris, supra* at 292. Accordingly, we reject the Government's argument on the basis of the decision of this Court in *United States v. Lenoir*, 13 M.J. 452 (C.M.A. 1982).

The decision of the United States Army Court of Military Review is affirmed as to findings but reversed as to sentence. The sentence is set aside. The record of trial is returned to the Judge Advocate General of the Army. A rehearing on sentence may be ordered.

Chief Judge EVERETT concurs.

COX, Judge (dissenting):

I respectfully dissent. Here the military judge determined factually that the defense had not met the burden of sustaining the challenges for cause of members Plumer and Dempsey. *See* para. 62*h* (2), Manual for Courts-Martial, United States, 1969 (Revised edition). The Court of Military Review made a similar factual determination in affirming the sentence. Assuming, without deciding, that the military judge's ruling constituted such an abuse of discretion as to be an "error of law," I cannot see how this error "materially prejudices the substantial rights of the accused," in view of the sentence adjudged * by the members, and particularly in view of the lenient pretrial agreement pursuant to which the sentence was further reduced by the convening authority. Article 59(a), Uniform Code of Military Justice, 10 U.S.C. § 859(a).

---

* The majority relies on the fact that the approved sentence included a dishonorable discharge to hold that the error was not harmless. Yet the accused agreed to a plea bargain which expressly provided for a dishonorable discharge.