UNITED STATES, Appellee,

v.

Specialist Four Donald R. YARDLEY, 415–31–7590, United States Army, Appellant.

CM 448948.

U.S. Army Court of Military Review.

12 June 1987.

For Appellant: Major Marion E. Winter, JAGC, Captain Stephanie C. Spahn, JAGC (on brief).

For Appellee: Colonel Norman G. Cooper, JAGC, Lieutenant Colonel Gary F. Roberson, JAGC, Major Byron J. Braun, JAGC (on brief).

Before PAULEY, KUCERA, and De GIULIO, Appellate Military Judges.

## OPINION OF THE COURT

PAULEY, Senior Judge:

Contrary to his pleas, appellant was convicted by a general court-martial composed of officer members, of forcible sodomy with a child under the age of sixteen years, wrongful use of marijuana, willful disobedience of an order from a superior commissioned officer, violation of a lawful general regulation, assault and battery, and wrongful communication of a threat, in violation of Articles 125, 112a, 90, 92, 128, and 134, Uniform Code of Military Justice [hereinafter cited as UCMJ], 10 U.S.C. §§ 925, 912a, 890, 892, 928, and 934 (1982 and Supp. II 1984), respectively.

The appellant alleges that the military judge erred by denying a challenge for cause against a court member where that court member had evinced a "strong emotional response" to photographs of the victim. We disagree and will affirm the findings and sentence.

### I

Well into the presentation of the government's case on the merits, the defense counsel moved for a mistrial involving matters not germane to the assigned error. At the conclusion of the Article 39(a), UCMJ, session to dispose of this defense motion, the trial counsel informed the military judge that a member of the court-martial panel, Lieutenant Colonel (LTC) Thomas, "has made a request to speak with you for a second." Lieutenant Colonel Thomas was brought into the Article 39(a), UCMJ, session and the following occurred:

MILITARY JUDGE: Very well. Colonel, you indicated a desire to pose a question to the court?

MEMBER (LTC THOMAS): Yes. At this point I have very strong feelings from seeing the pictures, and I don't know—I just wanted to bring that to your attention—I feel very emotional right now, and I just felt that you needed to know that. I'm being honest.

MILITAYR [sic] JUDGE: Very well. Do counsel for either side want to voir dire this panel member at this point?

MR. COHEN: [Defense counsel] No, Your Honor.

TRIAL COUNSEL: Colonel Thomas, is there anything other than the evidence that you have seen in this court room that has caused you to feel strongly about ... Is it the pictures that you have just ...

MEMBER (LTC) THOMAS: The child—the pictures of the child—I just have a real feeling for children.

### II

One of the charges in this case, for which the appellant was convicted, involved a forcible sodomy, per anum, with the victim being the appellant's four-year-old stepdaughter, Stephanie S. The pictures referred to by LTC Thomas are six color photographs of the victim.

The first photograph depicts a child with long, blonde hair, looking into the camera with an engaging countenance. There are visible red marks on her face and neck. The background of the photograph suggests that she is sitting on the edge of an examination table in a medical facility. The next four photographs are close-ups of the child's neck and face, showing scratches and abrasions. The last photograph depicts only the child's spread buttocks with her underwear pulled down. There appears to be dried blood on her underwear and generally in the vicinity of her anus.

The government's first witness on the merits was the child's mother who testified that on the evening of 8 July 1985 at approximately 2100 hours, she placed Stephanie in bed at the apartment shared by the witness, her two children, and the appellant, who was her husband and the stepfa-

ther of the children. She related that her husband was lying on a couch "watching TV" and was aware of her activities. She then left the apartment and did not return until just after midnight, finding Stephanie awake, bloodied, and in a state of distress. Accompanied by her husband, she took the child to a hospital. The mother then identified the aforementioned photographs, verified that they were taken that evening at the hospital, and testified further on related matters. It was approximately at this time that the Article 39(a), UCMJ, session occurred and presumably shortly thereafter when LTC Thomas made his dramatic revelation.

### III

In addition to the colloquy between LTC Thomas, the military judge and counsel previously quoted, there were considerable further questions posed in the way of voir dire. Finally, LTC Thomas was allowed to return to the deliberation room and an extended discussion occurred among the remaining participants, culminating in a challenge for cause by the defense counsel. The military judge again recalled LTC Thomas and he was further questioned by the judge and counsel. Finally, the military judge denied the challenge.

Lieutenant Colonel Thomas generally testified that he felt a "lot stronger" about the case because the victim was a child, that he had no problem dealing with his emotions as to "guilt or innocence," but expressed some reservations about the sentencing phase of the trial as evidenced in the following:

MR. COHEN: [Defense Counsel]

. . . .

Or, do you feel that your emotions are so strong that you would question your ability to be the kind of juror that you would want to have on the court.

[To Military Judge] Would that be a fair way of putting it, Your Honor.

MILITARY JUDGE: Did you understand the question, Colonel?

MEMBER (LTC THOMAS): I have a feel for that. And as to the guilt or innocence, I don't think that I have any problem.

I just feel that child abuse—just after seeing those pictures, I just welled up inside, and I felt, you know, that's really detestable what happened.

And I really feel very strongly in that direction. I felt I have to bring that to somebody's attention because I just feel it right now; and if I didn't, and somebody said something different, it could be a mistrial and I don't want that to happen.

MR. COHEN: OK. But still, do you think . . .

MEMBER (LTC THOMAS): I think I could be impartial; yes I do.

MR. COHEN: Even if there was a sentencing phase, would you be the kind of juror that you would want to have sitting on a court?

MEMBER (LTC THOMAS): Probably not. You know, my feelings about this, the child abuse, after seeing that picture, I. . . .

Finally, after more questions and the return of LTC Thomas to the deliberation room; he was recalled and the following transpired:

MILITARY JUDGE: Now, Colonel Thomas, I have called you back in here in an effort to clarify one remaining point.

As a panel member, you are not expected to be unaffected by evidence that is offered at a trial. In fact, if you were to ignore, or be unaffected by it, then the Trial Counsel would not be offering it in the first place.

The issue with which we're concerned, however, is whether your emotional reaction to this particular evidence is so overwhelming that you cannot fairly and objectively resolve the issues of guilt or innocence with this particular accused. And if—in the event that he would be convicted—you would give the photographs that you have seen a dispropor-

tionately heavy weight in your deliberation on sentencing.

Again, they are properly to be considered for both purposes. The question is whether you cannot place them in the proper context.

MEMBER (LTC THOMAS): In the light of being found guilty or innocent, I have no problem in objectively determining that.

The fact that it was a child was the thing that really turned me off. My first thought that came to mind was that this is unbelievable. I have never been involved with anything of that nature before. My mind just started to go ... you know, I don't know whether impartially I could, if found guilty, I would be very ... yes, I would have to—you know—my emotions I think would force me to be a little tougher.

MILITARY JUDGE: You understand that the fact that the victim in this case is a child, is a proper aggravating factor to be considered.

MEMBER (LTC THOMAS): Yes.

MILITARY JUDGE: Very well. Do counsel for either side have any additional questions?

MR. COHEN: Just one, if I may.

MILITARY JUDGE: Sure.

MR. COHEN: Colonel, maybe we can put it in another context. You understand that once evidence comes before you, as the Judge has said, you can consider it. That means that you should consider it, one way or the other. And that evidence is going to have, or to trigger, an emotional response on the part of a sensitive human being.

The question that the courts are concerned with, if I may, is whether or not the emotions become so great that it overwhelms the court member's ability to be fair and rational in considering all the evidence that comes before you.

And so our question to you is whether or—or, my question to you—is whether or not you feel comfortable; that even though there is an emotional reaction in determining—if there is a guilty finding —and, then sentencing; that your good judgment and your ability to exercise that judgment is not going to be overwhelmed by your emotions. Or whether or not you think that that's not the case, that you will take cognizance of your emotions but not be totally overwhelmed by them.

MEMBER (LTC THOMAS): I think I can take cognizance of my emotions.

## IV

■ Citing recent decisions by the Court of Military Appeals urging liberality in the granting of challenges for cause; the appellant's brief seems to argue that a per se rule should be established which would require the trial judge to grant a challenge "when a court member is so emotionally affected by certain evidence that he volunteers this information to the court in order to avoid the possibility of a mistrial...." We decline to establish any sort of per se rule, but prefer, instead, to leave this important decision as a matter for the sound discretion of the military judge. *United States v. Smart,* 21 M.J. 15 (C.M.A. 1985); *United States v. Heriot,* 21 M.J. 11, 14 (C.M.A. 1985).

The appellant also argues that the comments of LTC Thomas demonstrated a "specific bias against sodomy with a child" so as to prevent him from participating in a trial involving that offense. Finally, the appellant argues that the extent of LTC Thomas' bias was not adequately challenged and explored in the voir dire proceedings.

The time-tested standard for determining the impartiality of court members is whether such a member "is mentally free to render an impartial finding and sentence." *United States v. Parker,* 19 C.M.R. 400 (C.M.A. 1955). *See also United States v. McQueen,* 7 M.J. 281 (C.M.A. 1979). The

military judge's ruling on challenges for cause should not be disturbed on appeal absent an abuse of discretion. *United States v. Porter,* 17 M.J. 377, 379 (C.M.A. 1984). *See also United States v. Miller,* 19 M.J. 159, 163 (C.M.A. 1985); *United States v. Davenport,* 17 M.J. 242 (C.M.A. 1984). In this case, we need to carefully examine the voir dire testimony of LTC Thomas and determine whether the military judge abused his discretion in denying the questioned challenge for cause. Fortunately, he was questioned at great length and a substantial voir dire record is available.

■ We begin by strongly reaffirming the proposition that trial judges should be most liberal in granting challenges for cause and applaud the recent spate of decisions urging that view. *United States v. Reynolds,* 23 M.J. 292 (C.M.A. 1987); *United States v. Smart,* 21 M.J. 15 (C.M.A. 1985); *United States v. Moyar,* 24 M.J. 635 (A.C.M.R.1987). The case, sub judice, is to be distinguished from the more typical situation represented by the cases cited above, where a prospective court member, during voir dire questioning, either relates something from his background or expresses some bias or prejudice which would bring into question his ability to impartially sit as a member of the court. In the case under consideration, the member in question successfully passed a rigorous test of initial voir dire questioning but only expressed reservations to evidence presented at trial.[1]

■ LTC Thomas felt that the crime of forcible sodomy with a child—at that point in time, only alleged—was "unbelievable" and "detestable." It is likely that he was not alone in that assessment. The appellant was accused of the type of crime that surely would offend the Everyman and deservedly earns rather universal condemnation. The tender age of the victim was, of course, an aggravating factor not only in the mind of LTC Thomas but also in the eyes of the law. *See generally Parker.* LTC Thomas reacted in a dramatic fashion to the photographs of the victim and we have determined that his reaction was nothing less than normal, the only distinction being that he candidly and perhaps uncharacteristically expressed his heartfelt emotions.

We cannot have automatons for court members and they cannot be devoid of common decency. We believe that these photographs would have inflamed the passions of any normal person, and well they should.[2] The only question to be answered is whether LTC Thomas was mentally free to render an impartial sentence based on the law and the evidence. The results of the lengthy voir dire, succinctly stated, are that his emotions would force him to be a "little tougher" on sentencing but that in the end, he could "take cognizance of" his emotions. We can ask no more of any Army officer under similar facts and circumstances.

■ Finally the appellant's argument that LTC Thomas demonstrated such a bias against sodomy with a child so as to prevent him from participating in this trial likewise has no merit. Obviously, LTC Thomas has some specific negative feelings as concerns the offense of sodomy with a child, but a member is not disqualified

---

1. We note that the initial voir dire questioning of the panel was fairly extensive, occupying some forty-four pages of the record of trial, which in total, consisted of 589 pages. The specific matter pertaining to LTC Thomas involved an additional twenty pages. The original panel was composed of ten officers. At the conclusion of the voir dire proceedings, the government counsel challenged two members for cause, the defense joined in the challenges, and they were granted by the trial judge. The defense then challenged a member for cause, opposed by the government, and granted by the judge "in an abundance of caution." Thereafter, the government and defense each exercised a preemptory challenge, reducing the number of members to the authorized minimum of five.

2. There is no question here of the admissibility of these photographs with respect to Manual for Courts-Martial, United States, 1984, Mil. R. Evid. 403.

merely because he abhors the particular crime charged more than others. *See generally Parker* and cases cited therein; *see also Reynolds,* 23 M.J. at 294; *Smart,* 21 M.J. at 20; and *Heriot,* 21 M.J. at 13.

We find that the trial judge did not abuse his discretion in denying the challenge for cause in this case. We are satisfied that the lengthy voir dire proceedings more than adequately demonstrate that the questioned member was capable of hearing the evidence and determining an appropriate sentence without prejudice to the appellant.

We have also considered those matters personally asserted by the appellant and find them to be without merit.

The findings of guilty and the sentence are affirmed.

Judge KUCERA and Judge De GIULIO concur.