UNITED STATES

v.

Staff Sergeant Gregory A. DALE, FR502–
64–0085, United States Air Force.

ACM 29794.

U.S. Air Force Court of Military Review.

Sentence Adjudged 30 Dec. 1991.

Decided 1 Nov. 1993.

**504**

Appellate Counsel for the Appellant: Colonel Terry J. Woodhouse, Lieutenant Colonel Jay L. Cohen, Major Alice M. Kottmyer, and Captain Ursula P. Moul.

Appellate Counsel for the United States: Colonel Richard L. Purdon, Colonel Jeffery T. Infelise, Lieutenant Colonel Brenda J. Hollis, Major Jeffrey C. Lindquist, Major Paul H. Blackwell, Jr., and Major John H. Kongable.

Before DIXON, GRUNICK, PEARSON, and KEAN, Appellate Military Judges.

## OPINION OF THE COURT

KEAN, Judge:

Before a general court-martial composed of officer members, the appellant pleaded guilty to one specification each of rape and sodomy, and two specifications each of indecent acts, the victim in each case being his minor daughter. He was convicted in accordance with his pleas and sentenced to a dishonorable discharge, 20 years confinement, total forfeitures, and reduction to E–1. The convening authority reduced the forfeitures pursuant to a pretrial agreement, but otherwise approved the sentence as adjudged.

Before this court, appellant initially assigned as error the military judge's denial of defense challenges for cause against two court members. We permitted appellant to file, out of time, a supplemental assignment of errors asserting ineffective representation by trial defense counsel, and a second supplemental assignment of error asserting that his guilty pleas were coerced. *United States v. Grostefon*, 12 M.J. 431 (C.M.A.1982). Both supplemental assignments of error were accompanied by affidavits of the appellant. The government has responded with, *inter alia*, affidavits of trial defense counsel. All issues now are joined and the case is ripe for decision.

■ Appellant's first assigned error has to do with challenges for cause against two court members, Colonel Rensler and Captain Blankinship. Colonel Rensler, responding to a question during group *voir dire*, said that he knew of another case involving an officer convicted of child sexual abuse. He said that officer's case had been handled by the civilian court system, and the officer was sentenced to participate in a treatment program. The Air Force then administratively discharged the officer. Colonel Rensler felt that the treatment of this officer was "excessively lenient" and that "justice would have been better served had he been tried in the military courts." He said, though, that he did not think incarceration was necessarily

required in such cases, and denied having formed any idea of an appropriate sentence in appellant's case. Later, in response to individual questioning by the military judge, Colonel Rensler asserted that he would not "have to" adjudge confinement or any other particular sentence and that he could and would listen to all the evidence. He viewed the appellant's case as not "tied together" with the earlier case he remembered.

Appellant challenged Colonel Rensler on the ground that he had a fixed predisposition to adjudge confinement.

*Voir dire* of Captain Blankinship disclosed that he was a career security police officer serving as Operations Officer of the security police squadron. He was in charge of security police investigations on base, but was not familiar with the appellant's case since it had been investigated by the Office Of Special Investigations, not the security police. He said that he attended the base "cops and robbers" meeting in his commander's absence, but, being aware of his assignment to the court-martial scheduled to try appellant, he had excused himself from the meeting when appellant's case was briefed. Appellant challenged Captain Blankinship on the stated ground that "putting cops in law enforcement on a jury does not appear to be very fair."

■ An accused is entitled to be tried by court members whose minds are open as to what is an appropriate sentence. A member who asserts, without wavering, that he necessarily will adjudge a particular type of sentence (e.g., confinement, or a punitive discharge), or that he will not, under any circumstances, consider adjudging some type of lenient sentence, is by implication saying that he will disregard the evidence, arguments of counsel, the judge's instruction, and the views of other court members, to the extent they do not comport with the member's fixed ideas. Such a member should be excused. *United States v. Heriot,* 21 M.J. 11 (C.M.A. 1985). But the burden of proof to show that the challenged member holds such fixed ideas is on the party propounding the challenge; he "must raise the contention of bias from the realm of speculation to the realm of fact." *United States v. Dawdy,* 17 M.J. 523,

526 (A.F.C.M.R.1983) *rev'd in part,* 19 M.J. 69 (C.M.A.1984). This the appellant has not done with respect to Colonel Rensler. Despite several attempts by trial defense counsel to get Colonel Rensler to commit himself on the subject of confinement, he declined to do so. His only statements on the subject suggest the absence, not the presence, of an inelastic attitude toward confinement.

■ Appellant's sole reason for challenging Captain Blankinship appears to be that he is a security police officer; defense counsel stated on the record that "Captain Blankinship himself appears to be fair and open-minded." But there is no *per se* rule that bars present or former law enforcement officials from serving as court members. *United States v. Berry,* 34 M.J. 83, 88 (C.M.A. 1992) (Cox, J. concurring). Appellant does not point to any evidence raising "substantial doubt as to the legality, fairness, and impartiality" of Captain Blankinship's participation as a member of the court. R.C.M. 912(f)(1)(N).

In our independent review of the record we have found none.

■ We have in the past admonished military judges that challenges for cause are to be granted liberally. *United States v. Jobson,* 28 M.J. 844 (A.F.C.M.R.1989); *United States v. Moyar,* 24 M.J. 635 (A.C.M.R.1987); *United States v. Dawdy, supra.* We reiterate that admonition here, but liberality need not extend to crediting mere speculation, or to the minute dissection of *voir dire* testimony concerning hypothetical situations. *See United States v. Tippit,* 9 M.J. 106, 107 (C.M.A.1980). Military judges are expected to exercise their sound discretion in determining whether a challenged member can sit "free from substantial doubt as to legality, fairness and impartiality." Absent clear abuse, we will not disturb that exercise of discretion. *United States v. Reynolds,* 23 M.J. 292 (C.M.A.1987); *United States v. Smart,* 21 M.J. 15 (C.M.A.1985); *United States v. McQueen,* 7 M.J. 281 (C.M.A.1979). We find no abuse of discretion in empaneling Colonel Rensler and Captain Blankinship.

Appellant's first supplemental assignment of error asserts that trial defense counsel

were ineffective in a number of particulars. In summary, these encompass allegation of failure to adequately investigate and prepare the case, failure to assert certain objections and challenges, failure to properly advise the appellant of certain of his rights and the consequences of certain of his decisions; and coercion of the appellant to plead guilty and offer an inaccurate stipulation and testimony in support of that plea. He also asserts that his original detailed defense counsel, upon separation from the service, solicited money from him to continue representation.

█ In response, the government has filed affidavits of trial defense counsel rebutting each of the appellant's allegations. We do not deem it necessary to recount the allegations, and the government's rebuttal thereto, in detail. Having considered appellant's submissions, the affidavits of trial defense counsel, and the record of trial as a whole, we have no reason to doubt counsel's explanation. What the appellant seems to see as evidence of ineffective representation appears to us as prudent trial tactics in the face of overwhelming evidence of guilt. The assertion in his stipulation and testimony which he now suggest were false, he swore at trial were true. What he represents to be "coercion" we view as a conscientious attempt by counsel to make their client see the gravity of his situation. In any event, success or failure of trial tactics is not the yardstick by which the effectiveness of counsel is measured; it is far too easy to second-guess trial tactics after the fact. *United States v. Sanders*, 37 M.J. 116, 118 (C.M.A.1993).

In assessing claims of ineffective representation, we apply the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). First, appellant must show that his defense counsel committed errors so serious that counsel was not functioning as the "counsel" guaranteed by the Sixth Amendment. Second, he must show that the deficient performance prejudiced the defense, depriving the appellant of a fair trial whose result is reliable. *See United States v. Sanders, supra; United States v. Scott*, 24 M.J. 186 (C.M.A.1987). The burden is on appellant to meet both prongs of this test.

*United States v. Mansfield*, 24 M.J. 611, 616 (A.F.C.M.R.1987).

Appellant has not carried that burden. The record reflects that he was vigorously and effectively represented by counsel whose trial tactics were necessarily shaped by the strength of the government's case. Appellant received the effective representation to which he is constitutionally entitled.

Appellant's second supplemental assignment of error asserts that his guilty pleas were improvident because he was coerced into entering them. This assertion is at least partially subsumed in, and answered along with, his general assertion of ineffective representation. Counsel evidently advised appellant that a guilty plea, and a pretrial agreement if possible, offered him the best hope of a favorable sentence outcome. Appellant took that advice; his responses during the military judge's inquiry into the providence of his pleas indicate that he did so of his own free will, without either coercion or improper inducement. Ordinarily that would end the inquiry; post-trial speculation about facts admitted by an accused at trial in support of his guilty plea "cannot be countenanced." *United States v. Harrison*, 26 M.J. 474, 476 (C.M.A.1988). *See United States v. Prater*, 32 M.J. 433, 437 (C.M.A.1991); *United States v. Sievers*, 29 M.J. 72, 74 (C.M.A. 1989).

We note, however, that appellant's affidavit accompanying his second supplemental assignment of error suggests not so much that his plea was coerced, as that it was the product of his own disturbed mental and emotional state at the time. This is tantamount to a suggestion that appellant lacked the mental capacity to stand trial. No such suggestion was made at trial, and a sanity board conducted approximately two months before the trial began concluded that the appellant had "sufficient mental capacity to understand the nature of the proceedings and to cooperate intelligently in his defense." We find nothing in the record to suggest otherwise, and no basis for questioning the providence of the appellant's guilty pleas.

The material submitted by appellant under *United States v. Grostefon, supra*, is extensive. We have carefully reviewed that mate-

rial and find it raises no other issues warranting comment. On the basis of the entire record, we conclude that the findings and sentence are correct in law and fact, the sentence, as approved, is appropriate, no error prejudicial to the substantial rights of the appellant was committed. Accordingly, the findings of guilty and the approved sentence are

AFFIRMED.

Chief Judge DIXON and Judge GRUNICK concur.

PEARSON, Judge (dissenting):

I disagree with the majority opinion as to the correctness of the military judge's denial of the challenge for cause against the security police officer. A short hypothetical scenario should illustrate my concern.

State troopers in Altus, Oklahoma, a state far away from your home, arrested your teenage son for raping and sexually abusing a young Altus female. He is now pending trial in state court before an Altus jury which includes the local Altus Deputy Chief of Police as a member. During voir dire, the Deputy Chief states he occasionally attends meetings with state troopers and the local district attorney where they brief the mayor of Altus on pending criminal investigations involving Altus citizens. In fact, after being selected as a potential juror, he excused himself from one such meeting when the district attorney started to discuss your son's case.

If the Deputy Chief continues to sit after the defense challenges him, do you honestly believe your son will receive a fair hearing from that jury? Would your answer change if the Deputy Chief appears at trial to be a fair and open-minded person who says he will be as impartial as the day is long? More importantly for our analysis, will disinterested third parties who hear of the case feel your son received a fair trial if he is convicted? I believe most reasonable people would answer no to all questions. Should the answer be any different if the trial involves military rather than civilian officials, takes place in a military courtroom instead of a civilian one, and involves only a sentencing proceeding? I think not.

Rule for Courts–Martial (R.C.M.) 912(f)(1)(N) provides that a court member should not sit if it would cast substantial doubt on the "legality, fairness, and impartiality" of the trial. The rule focuses on appearances—the way those outside the military courtroom door, and even outside the military establishment altogether, perceive the fairness and impartiality of the trial. *United States v. Berry*, 34 M.J. 83 (C.M.A. 1992); *United States v. Miller*, 19 M.J. 159 (C.M.A.1985); *United States v. Hampton*, 50 C.M.R. 232 (A.C.M.R.1975).

In the Altus Air Force Base courtroom, Sergeant Dale found himself in a situation somewhat akin to my hypothetical scenario, except he was awaiting sentencing instead of trial on the merits. He found Captain Blankinship, the Altus "Deputy Chief of Security Police" and security police "Operations Officer," sitting across from him as a court member. Captain Blankinship's duties included responsibility for base law enforcement and supervision over base security police criminal investigators. As part of his police duties, Captain Blankinship attended "cops and robbers" meetings with base legal office and Air Force Office of Special Investigations personnel. He even excused himself from one "cops and robbers" meeting "before the lawyer spoke" about this case.

While the litigants did not fully develop the nature of these "cops and robbers" meetings at trial, Air Force military lawyers know from common experience that legal and investigative personnel use such meetings (they are known by all sorts of colorful monikers, "cops and robbers" being one) to brief the installation commander on the status of pending criminal cases. Their briefing normally includes discussion on whether cases warrant prosecution, anticipated problems, and any unusual aspects. More importantly, those in attendance at such meetings usually get a unique opportunity to see how the installation commander views various offenders and offenses.

While security policemen and other law enforcement personnel are not *per se* disqualified as court members in military trials, I find Captain Blankinship's service as a

member created an "appearance of evil" denounced in R.C.M. 912(f)(1)(N) and the military judge abused her discretion in denying the challenge for cause. *Compare United States v. Swagger,* 16 M.J. 759 (A.C.M.R. 1983) *with United States v. McDavid,* 37 M.J. 861 (A.F.C.M.R.1993), and *United States v. McPhaul,* 22 M.J. 808 (A.C.M.R. 1986), *pet. denied,* 23 M.J. 266 (C.M.A.1986).

In this regard, the military judge based her denial of the challenge on a finding of sincerity in the challenged member's statements of fairness and impartiality. Her analysis was wrong. As defense counsel correctly, but unsuccessfully, argued at trial, when an issue of implied bias under R.C.M. 912(f)(1)(N) arises, military judges must focus on the system's appearance of fairness and not just court members' disclaimers of bias. The guidance of R.C.M. 912(f)(1)(N) reflects the President's concern that military trials must not only be fair but also appear to be fair. *United States v. Lake,* 36 M.J. 317 (C.M.A.1993); *United States v. Miller, supra; United States v. Abdelkader,* 34 M.J. 605 (A.F.C.M.R.1992). This case lacks that appearance, even though the members imposed a sentence that almost mirrored Sergeant Dale's pretrial agreement with the convening authority. For all intents and purposes, Captain Blankinship was the embodiment of law enforcement and crime prevention at Altus Air Force Base—appointing him to serve as an impartial member was asking too much of both him and the system.

I would remand the case for a rehearing on the sentence.